Francice Netcher et al., [1] v. Commissioner. Netcher v. Commissioner
Docket Nos. 107722, 107723, 107724, 107725, 107726.
United States Tax Court
1942 Tax Ct. Memo LEXIS 90; 1 T.C.M. (CCH) 56; T.C.M. (RIA) 42590; November 10, 1942
*90 Llewellyn A. Luce, Esq., 937 Munsey Bldg., Washington, D.C., for the petitioners. G. W. Brooks, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, J.: Respondent has determined deficiencies in income tax and penalties for the calendar year 1937 as follows: Definciency
Penalty
Francice Netcher
$ 306.83
$76.71
Ethel Netcher Chagnon
716.13
Mollie Netcher
306.83
76.71
Townsend Netcher
1,941.62
Irving Netcher
3,585.06
The proceedings were consolidated. The issue in each is the right of the petitioner, as beneficiary for life of a trust, to take credit individually for depreciation sustained upon trust assets in excess of the income of the trust. The facts are stipulated and we so find them. [The Facts] Briefly stated, the facts are that the petitioners, Ethel Netcher Chagnon, Townsend Netcher and Irving Netcher, are children of Charles Netcher, deceased, who died on June 19, 1904, a resident of Cook County, Illinois. The petitioners, Francice Netcher and Mollie Netcher, are children of Charles Netcher, Jr., who died on November 4, 1931, and who was also a child of the aforesaid Charles Netcher. All of the petitioners, with the exception of Francice *91 Netcher and Mollie Netcher, filed their income tax returns for the year 1937 with the collector of internal revenue, Chicago, Illinois. No returns were filed for that year by the petitioners Francice Netcher and Mollie Netcher. By the last will and testament of Charles Netcher his entire estate, aside from a special bequest to his widow, was left in trust to his widow, Mollie Netcher, now Mrs. Mollie Netcher Newbury. One-third of the net income from the trust estate was provided to be paid to the decedent's widow, Mollie Netcher, for life with the power by her will or deed to dispose of the right to such income from the date of her death to the termination of the trust. The income from the remaining two-thirds of the estate was to be divided by the trustee into four equal portions, each of such portions to be thereafter held in trust by the trustee "as a separate trust fund for each of my children." It was further provided by the will that until each of such children attained the age of 25 years respectively the trustee should use and expend so much of each separate trust fund held for each child as in her opinion was necessary for the education and support of such child. On attaining *92 his or her twenty-fifth year each child was to become entitled to receive the entire income from the separate trust held for his or her benefit and also to become entitled thereafter to one-fourth of the net income of the aforesaid two-thirds of the principal trust estate. The trust was not to terminate until the death of the last survivor of the decedent's widow and his four children. In case of the death of one of the decedent's children leaving issue the latter were to take the interest of the parent subject to an annuity payable to the widow of the deceased child. One of the assets of the estate left by Charles Netcher and included in the principal trust estate was certain real property in Chicago, Illinois. Following his death his widow, Mollie Netcher, as trustee, under authority vested in her by his will, borrowed the necessary funds and erected on this property a 17-story fireproof store and office building at a cost of approximately $5,714,759.52 which was thereupon leased to the Boston Store of Chicago. For the calendar year 1937, the sum of the charges for ground rent, interest on mortgage, taxes and depreciation on the building above referred to exceeded the rents by *93 the sum of $102,843.50. This deficit was treated as part of the expenses of the so-called principal trust created under the will of Charles Netcher. The charge for depreciation was an allowance for the loss sustained through exhaustion, wear and tear of the building and in computing the distributed income of the trust the trustee has continuously deducted from the gross income of the principal trust estate an allowance for the loss sustained each year through exhaustion, wear and tear of this asset and has set up a reserve to cover the loss so sustained. The balance in said reserve account on December 31, 1936 was $1,969.676.66 and on December 31, 1937 was $2,112,545.64. For the year 1937, depreciation sustained on all the properties of the trust estate amounted to $142,868.98 and after the deduction of this amount the said principal trust sustained a net loss of $133,993.24. For the year 1937, the trustee, under the will of Charles Netcher filed a Federal income tax return on Form 1041 in which she included the income not only of the so-called principal trust, but that of the four special trusts. The income realized from the special trusts, composed of income received on distributions *94 made to such special trusts by the principal trust during prior years and invested and thereafter representing the corpus in each instance of the separate trusts, was reported as follows: Gladys O. Netcher
$ 6,046.27
Francice Netcher
6,052.61
Mollie Netcher
6,052.61
Townsend Netcher
22,532.46
Ethel Netcher Chagnon
4,979.26
Irving Netcher
15,251.44
The Gladys O. Netcher referred to is the mother of Francice Netcher and Mollie Netcher and the widow of Charles Netcher, Jr., the deceased son of the grantor of the principal trust estate. The return also showed special credits to the petitioners herein as follows: Francice Netcher
$ 280.60
Mollie Netcher
289.60
Townsend Netcher
705.50
Ethel Netcher Chagnon
2,999.19
Irving Netcher
3,329.62
Certain charges were also shown with reference to four of the beneficiaries and it is agreed by respondent that the aforesaid items of income, credits and charges as so included are correct. The net distributable income to each beneficiary was computed on the return of the trustee by subtracting from the net loss of the trust estate, plus said special charges, the income from the special trusts, plus the special credits *95 shown hereinabove. The result as shown on the return was a net loss of $68,599.45 and no distributable income to any of the beneficiaries, petitioners herein, except Townsend Netcher, whose distributable income was shown as $200.57. In filing their Federal income tax returns for the year 1937 the petitioners, Irving Netcher, Townsend Netcher and Ethel Netcher Chagnon, included therein their respective net income or proportional net loss from the estate as shown by the return of the trustee as above set out. [Opinion] It is contended by the respondent that the depreciation sustained from properties of the principal trust estate in the taxable year was deductible only by the trustee in computing net income of that estate and that any depreciation not thus set off and consequently reported in the net loss by the estate was not subject to deduction by the individual beneficiaries from income received by them from other sources. His primary contention is that the question is res adjudicata by reason of the decision of the Board of Tax Appeals in the case of Mollie Netcher Newbury et al., 26 B.T.A. 101. This decision involved the trust or trusts *96 created under the will of Charles Netcher, but we do not agree that the decision therein is res adjudicata of the question here presented. In the cited case the question was whether the beneficiaries were taxable upon the income of the trust estate without deduction of an amount representing depreciation of the trust assets. In the year covered by that proceeding the trust estate had realized net income distributable to the beneficiaries. In computing the amount so distributable the trustee had deducted depreciation and the beneficiaries had reported only the amount of income in excess thereof. Our holding was that they were taxable only upon such excess and that the depreciation was deductible. No question of excess of depreciation over and above trust income was involved. Not only was the question thus presented not the same, but that proceeding involved the years 1923 to 1925, inclusive, which were governed by the Revenue Acts enacted prior to that of 1928. In the Revenue Act of 1928, for the first time, the rule with respect to deduction by a life tenant of depreciation upon the physical property of the estate was radically changed. It was there provided that for the purpose *97 of a depreciation allowance he was to be considered as the "absolute owner of the property". The petitioners here are life tenants. Since the enactment of the Revenue Act of 1928, the succeeding Revenue Acts, including that of 1936 [1] here involved, have carried this same provision. We think it is clear that of the five beneficiaries here involved, four of them are entitled to offset their proportionate part of the depreciation sustained by the principal trust here involved not only against income of the trust estate, but against income received by them from other sources. The effect of the change of the law of the Revenue Act of 1928, the reasons therefor, and legislative history of the changes are fully discussed in the opinion in the case of Sue Carol, 30 B.T.A. 443, in which the instant question was presented upon almost identical facts with those here established. We think that this case concludes the respondent not only as to the questions raised by him that the decision in the case of Mollie Netcher Newbury et al., supra, is res adjudicata of the present question, by its demonstration of the change in the *98 law and the new rights given thereby to the life tenant, but concludes him upon his general contention that the petitioners, as trust beneficiaries, are not entitled under section 23 (1) of the Revenue Act of 1936 to credit against their individual income from other sources their proportionate share of depreciation sustained upon the trust assets and in excess of the income from the trust estate. *99 One of the petitioners herein, Ethel Netcher Chagnon, however, is in a different position from the other petitioners, she having filed a nonresident alien return certifying to the fact that she is a subject and citizen of the Republic of France. As such, she is taxable under section 211 of the Revenue Act of 1936 [2] upon gross income if not engaged in trade or business within the United States and not having an office or place of business therein. No contention is made that this petitioner maintains an office or place of business in this country. *100 It appears, however, to be the contention of petitioners that the trustee under the will of Charles Netcher has correctly reported in one return all of the income received by the so-called principal trust as well as the special trusts. It is insisted that there is in fact only one trust, the estate of Charles Netcher, and that the income derived from the so-called separate trusts is in fact income from that estate. Upon this basis it appears to be the theory of petitioners that the trustee of the separate trusts is entitled to deduct from their income the depreciation sustained upon the assets of the principal trust and, having properly done so, no income was in fact distributable and consequently none was taxable to Ethel Netcher Chagnon. We do not agree with this contention. An examination of the will of Charles Netcher shows clearly an unmistakable intent to create a principal trust estate consisting of the gross estate left by him over and above certain specific bequests. The will further provides for the creation of four separate trust estates. The corpus of each of these separate trusts is to be made up through the years by accumulation of distributions of one-fourth of two-thirds *101 of the net income of the principal trust. The amounts set aside each year and paid over by the trustee of the principal trust to herself as trustee of each of the separate trusts were clearly not a part of the estate of Charles Netcher. They were income of that estate when so distributed. Thereafter these accumulations of income were credited to each of the four separate trusts and invested. These investments were segregated and carried in the separate accounts of the respective individual separate trusts. Sales and purchases of securities were made for and recorded in each of those individual accounts. Upon such conditions we think that the corpus of each of these separate trusts did not constitute a part of the principal trust, representing the estate of Charles Netcher, and that no authority existed on the part of the trustee of the principal trust to appropriate income of the separate trusts to restore a loss occasioned by depreciation upon the assets of the principal trust. It is clear that trustee returns should have been filed for each of these separate trusts and that the income from each should have been reported by the several beneficiaries who, in turn, would be entitled *102 to take credit against such income for any depreciation sustained upon the assets of the principal trust of which they were also beneficiaries. The fact that Mollie Netcher Newbury, as trustee of all of these trusts, has included the income of all in one return and offset depreciation of the principal trust property against that of the separate trusts has had no effect with respect to the net taxable income of the beneficiaries except that of Ethel Netcher Chagnon. In each case the same deduction has been made from income of each beneficiary which would have been made direct by such beneficiary under a correct return, except Ethel Netcher Chagnon, who, by reason of her status as a nonresident alien, is denied the deduction. Returns were not filed by Francice Netcher and Mollie Netcher. This was apparently due to the fact that under the method of reporting the income of the separate trusts those individuals were deemed not to be in receipt of distributable income. Correctly reporting they would have been shown to be in receipt of income but with an offsetting credit for depreciation sustained by the principal trust. As certain adjustments were made by respondent which are by the *103 stipulation shown to be agreed to by petitioners, Decisions under Docket Nos. 107722, 107724, 107725 and 107726 will be entered under Rule 50. Decision under Docket No. 107723 will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Ethel Netcher Chagnon, (Docket No. 107723); Mollie Netcher, (Docket No. 107724); Townsend Netcher, (Docket No. 107725); and Irving Netcher, (Docket No. 107726).↩
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME In computing net income there shall be allowed as deductions: (1) Depreciation. - A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. In the case of property held by one person for life with remainder to another person, the deduction shall be computed as if the life tenant were the absolute owner of the property and shall be allowed to the life tenant. In the case of property held in trust the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.↩
2. SEC. 211. TAX ON NONRESIDENT ALIEN INDIVIDUALS (a) No United States Business or Office. - There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount, except that such rate shall be reduced, in the case of a resident of a contiguous country, to such rate (not less than 5 per centum) as may be provided by treaty with such country. (b) United States Business or Office. - A nonresident alien individual engaged in trade or business in the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a). As used in this section, section 119, section 143, section 144, and section 231, the phrase "engaged in trade or business within the United States" includes the performance of personal services within the United States at any time within the taxable year, but does not include the performance of personal services for a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, by a nonresident alien individual temporarily present in the United States for a period or periods not exceeding a total of ninety days during the taxable year and whose compensation for such services does not exceed in the aggregate $3.000. Such phrase does not include the effecting of transactions in the United States in stocks, securities, or commodities through a resident broker, commission agent or custodian.↩